IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| KIM RYANS | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | No. 11-7154 |
| FEDERAL RESERVE BANK OF PHILADELPHIA | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                        February 27, 2013

      Plaintiff Kim Ryans brings this employment discrimination action against her former employer, Defendant Federal Reserve Bank of Philadelphia (FRB), alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. Ann. §§ 951-963. Ryans alleges she was unlawfully terminated because of her race and her disability, and in retaliation for filing an internal "EEO complaint." She also alleges FRB failed to accommodate her disability and failed to engage in the interactive process. Prior to discovery, FRB filed a motion for summary judgment with supporting affidavits and other documents. Ryans filed a brief in opposition to the motion, but filed no supporting materials despite an Order from this Court directing her to supplement her brief with such materials. Because there are no disputes as to any material facts and because FRB is entitled to judgment as a matter of law, FRB's motion will be granted.

**FACTS**[1]

---

[1] "On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Ryans began working for FRB on March 27, 1989. In 2005, she was promoted to manager of the Paying and Receiving Division in the Cash Services Department. On February 18, 2009, Ryans began a leave of absence due to a shoulder injury and requested it be designated as leave under the Family Medical Leave Act (FMLA). FRB's FMLA Leave Policy requires the employee requesting FMLA leave to submit medical certification of her condition to FRB's Medical Division. FRB reserves the right to check with the employee as it deems necessary to ascertain her condition and the date of expected return. On March 5, 2009, FRB retroactively approved Ryans's request for FMLA leave from February 18, 2009, to March 3, 2009. FRB informed Ryans she had already exhausted 50 of her available 60 days of FMLA leave and thus any absence after March 3, 2009, would not be covered under FMLA. Despite having been informed on March 5 that her FMLA leave had expired, Ryans did not return to work the following day or submit medical documentation regarding her anticipated return date.

FRB held Ryans's job open and attempted to contact her regarding her medical status and possible return date. On March 27, 2009, more than three weeks after Ryans was due to return to work, her physician submitted documentation stating she was able to return to work without limitations on April 1, 2009. On April 1, however, Ryans did not return to work; rather, the FRB's Medical Division received a handwritten note from Ryans's physician stating she was suffering from migraine headaches and her return to work date was "not certain." Def.'s Ex. C, at 10. FRB's Medical Director, Dr. Natalie Hartenbaum, was unable to read the handwritten note in its entirety and determined the note failed to demonstrate a medical necessity for ongoing absence and no anticipated return date. Dr. Hartenbaum sent a letter to Ryans requesting she either authorize her physician to contact Dr. Hartenbaum or have her physician complete an Attending Physician's Work Recommendations form. Dr. Hartenbaum also stated in the letter

Ryans's absence was outside the normally recommended guidelines for the condition listed, and without the requested information from her physician, her continued absence was not supported.

By April 2009, the Cash Services Department had been without Ryans, one of its three managers, for several weeks and the department was struggling. Michelle Scipione, Vice President of Cash Services, and Ryans's supervisor, assigned critical duties ordinarily performed by Ryans, including vault alarms project oversight, management of coin inventory flow, staffing decisions, and vault budget projections, to other officers within the department. She was forced to delegate duties including management of daily work flows, participation in multiple systems work groups, and coordination of changes to contaminated currency processing to the Division coordinator. The changes were disruptive to the department's operation and presented risks to FRB because important duties were being split among several parties. Scipione communicated her concerns to Kim Taylor, Manager of Employee Relations, whom the Medical Division had been keeping apprised of Ryans's status. Scipione informed Taylor that if Ryans did not return to work in the near future, she would recommend Ryans's termination.

On April 17, 2009, after repeated requests, Ryans's physician submitted a completed Attending Physician's Work Recommendations form, which listed Ryans's return to work date as unknown. According to FRB, upon consideration of this April 17 submission, FRB decided to terminate Ryans's employment because her FMLA leave had expired and because neither she nor her doctor could provide any indication as to when she would be able to return to work. On Monday, April 20, 2009, Taylor and Scipione held a telephone conference with Ryans to advise her of her termination. Taylor informed Ryans that because the Cash Services Department could no longer hold her position open, and because she could not provide a date for her return, she was terminated effective immediately. After being informed of her termination, Ryans stated she

could return to work that day. When asked in response if anything had changed since her physician last stated in the April 17 recommendation that her return to work date was unknown, such as a recent doctor visit or updated prognosis, Ryans stated nothing had changed but she could still return to work immediately. As Ryans was unable to submit medical documentation to demonstrate her condition had changed, FRB proceeded with her termination. Ryans position was later filled by an African-American man.[2]

On September 22, 2009, Ryans dual filed a complaint against FRB with the Pennsylvania Humans Relations Commission (PHRC) and the Equal Opportunity Employment Commission (EEOC), alleging racial discrimination, disability discrimination, and failure to accommodate. The PHRC dismissed Ryans's complaint for lack of jurisdiction and transferred the case to the EEOC. On August 16, 2009, the EEOC issued Ryans a right to sue letter. On November 15, 2011, Ryans filed the instant lawsuit.

FRB subsequently filed a motion to dismiss and a motion to disqualify Ryans's counsel. A hearing on the disqualification motion was held on February 24, 2012, and Ryans's counsel ultimately withdrew. On April 20, 2012, Attorney Alston B. Meade entered an appearance on behalf of Ryans. On May 8, 2012, this Court dismissed Ryans's Complaint for failure to state a claim but granted her leave to file an amended complaint. Although Attorney Meade had entered his appearance, Ryans filed a pro se Amended Complaint on May 29, 2012. On June 6, 2012, Attorney Meade filed a motion to withdraw as counsel. On June 12, 2012, FRB filed the instant motion for summary judgment. Ryans filed a pro se response without any accompanying affidavits or documentary evidence. On August 24, 2012, after a hearing on Attorney Meade's motion to withdraw, this Court denied the motion to withdraw and ordered Ryans to submit

---

[2] Ryans asserts her position remained open for nine months after her termination, although she fails to support this assertion with affidavits or other documentary evidence.

4

affidavits, declarations, or other materials in opposition to FRB's motion for summary judgment by September 10, 2012. To date, Ryans has not filed any such materials.

**DISCUSSION**

A motion for summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh*, 418 F.3d at 267. To defeat a summary judgment motion, the non-moving party "must rely on affidavits, depositions, answers to interrogatories, or admissions on file" to show there is a genuine issue of material fact. *Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 199 (3d Cir. 2001) (quotation omitted). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Technologies, Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (citing *Sterling Nat'l Mortg. Co. v. Mortg. Corner, Inc.*, 97 F.3d 39, 45 (3d Cir. 1996), *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995), and *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, AFL-CIO*, 982 F.2d 884, 890 (3d Cir. 1992)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Ryans's Title VII racial discrimination claim is reviewed under the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under

this framework, Ryans must first establish a prima facie case of racial discrimination. *Id.* at 802. To establish a prima facie case of race discrimination under Title VII, Ryans must establish: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) under circumstances raising an inference of racial discrimination, FRB continued to seek out individuals with qualifications similar to Ryans's to fill the position. *See id.*; s*ee also Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797-98 (3d. Cir. 2003). Ryans has not established a prima facie racial discrimination claim because there are no facts in the record that raise an inference of racial discrimination. Ryans merely argues that similarly situated white managers and officers were allowed to remain on leave after their FMLA expired but were not terminated. Ryans provides no evidence to support this allegation. Without more, this factually unsupported and conclusory assertion is insufficient to support an inference of a racially discriminatory animus behind Ryans's termination. *See Solomon v. Soc'y of Auto. Eng'rs*, No. 00-2144, 2001 WL 866974, at *4 (W.D. Pa. July 6, 2001) (granting defendant summary judgment on plaintiff's sex discrimination claim where plaintiff cited only his own deposition testimony that women were given operable computers while he was given an inoperable computer because a plaintiff cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid summary judgment (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986))). Additionally, Ryans's position was filled by an African-American.

Even if Ryans could establish a prima facie case of racial discrimination, her claim would still fail. Under the *McDonnell Douglas* framework, if a plaintiff can establish a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Once an employer articulates a legitimate,

nondiscriminatory reason, the burden shifts back to the employee to show the employer's stated reason is a pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 804; *Sarullo*, 352 F.3d at 797. A plaintiff can then defeat summary judgment only by showing "some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Jones v. School Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (quoting *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994)).

FRB asserts it terminated Ryans because she had used up all of her FMLA leave, she could not provide a return date, and her department was struggling without someone performing her duties. FRB provided affidavits of two FRB supervisors, as well as an internal FRB "Recommendation for Termination of Employment" document created on April 20, 2009, stating Ryans's absence had become disruptive to her department's operations and created future risks for FRB. Def.'s Exs. A, B, D.

Ryans has failed to show this nondiscriminatory reason for her termination is a pretext for discrimination. As this Court has already determined, Ryans's unsupported and conclusory assertion that FRB allowed similarly situated white employees to remain on leave after their FMLA leave had expired fails to raise an inference of discrimination. Ryans also argues FRB's rationale for her firing is pretextual because her job remained open for nine months after her termination. Ryans, however, provides no evidence to support this allegation, and it is well established a party cannot rely on conclusory allegations in pleadings or supporting briefs to establish a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(A) (stating a party asserting a fact is genuinely disputed must support the assertion by "citing to particular parts of materials

7

in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"); *Celotex Corp.*, 477 U.S. at 324; *Pastore v. Bell Tel. Co. of Pa.*, 24 F. 3d 508, 511 (3d Cir. 1994); *GFL Advantage*, 272 F.3d at 199.[3] Ryans further argues her offer to return to work immediately upon her termination, which FRB rejected, demonstrates pretext. But when asked by FRB representatives if her willingness to return to work was based on some change in her condition or instruction by her doctor, Ryans stated her condition had not changed and she had not seen her doctor since he determined she was unable to work. FRB's rejection of Ryans's offer to return to work after she was terminated does not at all suggest her termination was for any discriminatory reason. On the contrary, it shows FRB adhered to its FMLA leave policy requiring employees on medical leave to provide a "fitness-for-duty certificate" prior to returning to work. *See* Def.'s Ex. C, at 3. Because there is no fact suggesting FRB terminated Ryans on the basis of her race, Ryans's Title VII claim fails.

Turning to Ryans's ADA claims, a disability discrimination claim under the ADA is also evaluated under the *McDonnell Douglas* burden shifting framework. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). To prevail on her claim, Ryans must first establish a prima facie case of disability discrimination by showing the following: (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified for the job with or without a reasonable accommodation; and (3) she was subjected to an adverse employment action as a result of discrimination. *See Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). An individual is disabled under the ADA if she actually has, has a record of having, or is regarded as

---

[3] Ryans's failure to cite the portion of the record containing this alleged fact prevents this Court from ascertaining whether Ryans's allegation is admissible as evidence, a requirement for a factual assertion to create a material issue of fact. *See* Fed. R. Civ. P. 56(c)(2), (4).

having "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(1).

Assuming Ryans's migraine headaches constitute a disability, Ryans is not a "qualified individual" under the ADA because she cannot perform her job with or without a reasonable accommodation. *See* 42 U.S.C. § 12111(8) ("The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."). Ryans argues she could perform her job with the reasonable accommodation of a leave of absence while she is suffering from migraines; however, for a leave of absence to be a reasonable accommodation, it must enable the employee to perform her essential job functions "in the near future." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004). "The weight of authority in the Third Circuit, as well as other Circuits, clearly establishes that a leave of absence for an indefinite duration is not a reasonable accommodation." *Dogmantis v. Capital Blue Cross*, 413 F. Supp. 2d 452, 460 (E.D. Pa 2005); *see also Fogleman v. Greater Hazleton Health Alliance*, 122 F. App'x 581, 586 (3d Cir. 2004) (holding a request for an indefinite leave of absence did not constitute a reasonable accommodation, and citing cases supporting this proposition). The record evidence demonstrates at the time of her termination, Ryans was unable to work due to her migraines and could not provide FRB a definite return date. FRB attempted to accommodate Ryans with leave time even after the expiration of her FMLA leave and continued to attempt to elicit additional information regarding her medical status and possible return date. As Ryans could not perform her job without an indefinite leave of absence, she is not a "qualified individual" under the ADA. She, therefore, fails to establish a prima facie case of discrimination under the ADA.

Even if Ryans could establish a prima facie case of disability discrimination, her claim would still fail because she cannot show FRB's asserted nondiscriminatory reason for her termination is a pretext for discrimination. Ryans makes the same pretext arguments in support of her ADA claim as she does in support of her Title VII claim. As previously concluded, Ryans has not shown any evidence raising a material factual dispute that FRB's asserted reasons for her firing are pretextual. Her disability discrimination claim, therefore, fails.

Ryans also alleges FRB violated the ADA by failing to accommodate her disability and failing to engage in the interactive process.[4] ADA regulations provide: "[t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] in need of the accommodation." 29 C.F.R. § 1630.2(o)(3). An employer's duty to engage in the interactive process, however, is triggered only when an employee requests an accommodation. *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000). The record is devoid of any facts demonstrating Ryans requested an accommodation. Moreover, Ryans still cannot show there was a reasonable accommodation that would have made her qualified to perform her job. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999) (holding the interactive process does not "remove the employee's burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the job's essential functions"). Ryans argues a leave of absence whenever she suffered from migraines would reasonably accommodate her disability. But an indefinite leave of absence, which is effectively the accommodation Ryans argues she

---

[4] FRB argues Ryans failed to exhaust her administrative remedies with regard to her failure to accommodate claim because she did not raise the issue in her EEOC and PHRA complaints. The Court need not examine this exhaustion argument because Ryans did not request an accommodation that is "reasonable" under the ADA.
.

needs, is not a "reasonable" accommodation under the ADA. *See Fogleman*, 122 F. App'x at 586 (holding a request for an indefinite period of time did not constitute a reasonable accommodation). Thus, Ryans's claims that FRB failed to accommodate her disability and failed to engage in the interactive process lack merit.

Ryans also asserts a discrimination claim pursuant to the PHRA. The PHRC has conceded it has no jurisdiction over FRB as a member of the Federal Reserve System. FRB operates pursuant to the Federal Reserve Act (FRA), which preempts state employment discrimination laws to the extent they offer protections beyond federal employment laws. *See Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 288 (3d Cir. 2006) (holding the FRA preempts application of New Jersey's employment discrimination statutes); *Evans v. Fed. Reserve Bank of Phila.*, No. 03-4975, 2004 WL 1535772, at *5 (E.D. Pa. July 8, 2004) (holding FRA preempts PHRA insofar as it expands the rights and remedies available under federal anti-discrimination laws). Accordingly, to the extent Ryans asserts a discrimination claim under the PHRA that differs from her ADA and Title VII claims, it is dismissed as preempted. Her PHRA claim otherwise fails for the same reasons her federal claims fail. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (noting "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently").

Ryans's final claim, that FRB retaliated against her for "fil[ing] an internal EEO complaint," Pl.'s Br. in Opp'n 4, is dismissed based on Ryans's failure to exhaust administrative remedies. A plaintiff bringing a Title VII claim must first exhaust her administrative remedies through the EEOC. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997). The subsequent lawsuit is limited to the claims reasonably within the scope of the initial administrative charge.

*Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 413-14 (3d Cir. 2010) (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)); *see also Atkinson v. LaFayette Coll.*, 460 F.3d 447, 453 (3d Cir. 2006) ("[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." (quotation omitted)). Ryans's administrative charge does not mention retaliation of any sort, let alone retaliation for submitting an EEO complaint, and such a claim could not be expected to grow out of the allegations in her administrative complaint that her termination was based on her race and disability. Ryans, therefore, has not exhausted her administrative remedies with respect to her retaliation claim, and that claim will also be dismissed.

Because there are no disputed material facts as to any of Ryans's claims, and FRB is entitled to judgment on those claims as a matter of law, FRB's motion for summary judgment will be granted. Judgment on all claims in Ryans's Amended Complaint will be entered in favor of FRB.

An appropriate Order follows.

BY THE COURT:

 /s/ Juan R. Sánchez
Juan R. Sánchez